FILED
2026 Feb-05 PM 12:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **ARLEATHA YOUNG,**<br>**Plaintiff,**<br><br>**v.**<br><br>**DENIEL DRISCOLL,**<br>**Secretary, U.S. Department of the Army,**<br><br>**Defendant.** | **CASE NO.: 5:24-cv-1816-LCB**<br>**JURY DEMANDED** |

## FIRST AMENDED COMPLAINT

**COMES NOW**, the undersigned counsel on behalf of Plaintiff, Arleatha Young, and files this First Amended Complaint against the Defendant Deniel Driscoll, in this matter, and in support thereof, respectfully shows unto this Honorable Court as follows:

### I. Introduction

1. This is an action for damages, injunctive relief, reinstatement, and other appropriate relief to remedy unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.), and related federal laws. Plaintiff Arleatha Young alleges that she was subjected to

discrimination based on her race, sex, disability, and reprisal for protected activity, and to a hostile work environment.

## II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper in the Northern District of Alabama under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged in this Complaint were committed in this district.

4. Specifically, Plaintiff was employed by the Army Contracting Command (ACC), which maintains its headquarters and principal offices at Redstone Arsenal in Huntsville, Alabama.

5. All personnel records and decisions concerning Plaintiff's employment, including requests for accommodation, leave, performance evaluations, and disciplinary actions, were administered and maintained by ACC officials located in Huntsville.

6. Additionally, Plaintiff's supervisory chain—including her immediate supervisor and the Commanding General of ACC—operate from this district and exercise final authority over employment decisions at issue in this case. Accordingly, the acts, omissions, and decision-making processes that form the

basis of Plaintiff's claims occurred within the Northern District of Alabama.

## III. Parties

7. Plaintiff Arleatha Young is an African American female who resides in Columbia, South Carolina. At all relevant times, she was employed as a Human Resource Specialist with the U.S. Department of the Army and was subject to the unlawful employment practices described herein.

8. Defendant Deniel Driscoll is the Secretary of the Army and is sued in his official capacity. The Department of the Army operates within the Northern District of Alabama, including the Redstone Arsenal.

## IV. Factual Allegations

9. Plaintiff Arleatha Young, an African American female over the age of 40 and a person with a documented history of physical and mental disabilities (including cancer and stress-related disorders), has been employed by the U.S. Department of the Army since 2008. She has consistently received positive performance evaluations and has no history of disciplinary actions prior to the events described herein.

10. Plaintiff is employed by the U.S. Army Contracting Command ("ACC"), a subordinate command within the U.S. Department of the Army. The headquarters for ACC is located at Redstone Arsenal in Huntsville, Alabama, which falls within the Northern District of Alabama.

11. All of Plaintiff's personnel files, including those related to her medical leave, performance evaluations, and administrative matters, are kept and maintained by the ACC's offices located in Huntsville, Alabama.

12. Plaintiff's first- and second-line supervisors report to and act under the authority of the Commanding General of ACC, who is based at Redstone Arsenal. All disciplinary actions and employment decisions affecting Plaintiff must be reviewed and approved by the chain of command headquartered in Huntsville.

13. Beginning in or around August 2021, Plaintiff was subjected to discriminatory and retaliatory treatment by her direct supervisor, Mr. Howard Hall, and other agents of the Defendant, based on her race, sex, disability, and prior EEO activity.

14. Plaintiff was denied funding for training opportunities regularly provided to similarly situated employees. Despite her requests for professional development resources, she was consistently excluded without justification.

15. On or about September 24, 2021, Mr. Hall slandered Plaintiff by spreading false and stigmatizing rumors that she had taken a disability or medical retirement and that she was a difficult employee with a history of having a bad attitude. These statements were made to other personnel in her office and were false.

16. In January 2022, Mr. Hall, along with Ms. Penelope Johnson, delayed processing Plaintiff's Voluntary Leave Donor Program (VLDP) request, which caused Plaintiff significant hardship during a period of illness and recovery.

17. On January 21, 2022, Mr. Hall issued a directive requiring Plaintiff to return to work despite the fact that she was on approved medical leave, further aggravating her medical condition and disregarding her documented health limitations.

18. Upon her return to work on March 22, 2022, Plaintiff discovered that Mr. Hall and others had falsely informed her coworkers, including Ms. Johnson and Mr. Gerald Fambro, that she was retiring or permanently disabled. These falsehoods were damaging to Plaintiff's professional reputation and created a perception of unreliability and disengagement among her peers.

19. On the same day, Plaintiff inadvertently received an email from Ms. Johnson which read, "it would be a miracle if she came back to work," further evidencing the dismissive and hostile environment she faced upon her return.

20. Beginning on or around March 30, 2022, Mr. Hall began a pattern of ostracizing Plaintiff from normal work interactions, gossiping about her health status, avoiding communication, and undermining her presence in the workplace, all of which significantly interfered with her ability to perform her job duties.

21. On April 20, 2022, Mr. Hall attempted to issue both written and verbal counseling to Plaintiff in front of their commanding officer, COL Kenneth Quimbly. This public rebuke was unjustified, degrading, and part of a broader pattern of harassment.

22. On April 28, 2022, Plaintiff was wrongfully charged AWOL for a prior period of medical absence during which she had submitted the necessary documentation. The charge was a result of deliberate delay by her supervisor in processing her paperwork and served no legitimate business purpose.

23. On May 17, 2022, shortly after Plaintiff reported a COVID-19 safety violation, she was forced to use her personal annual leave in retaliation for raising the concern. This occurred despite the clear work-related nature of the issue and her prior history of responsible conduct.

24. On or about June 30, 2022, Plaintiff received a lower-than-expected performance evaluation. The rating was attributed not to her actual job performance but to her extended medical leave, in disregard of her medical status and prior exemplary record.

25. On July 21, 2022, Plaintiff was removed from her role as Timekeeper for ATAAPS, a position of trust and responsibility she had held without issue. This removal followed shortly after her initiation of the EEO complaint process and was not based on any legitimate performance-related reason.

26. The conduct of Mr. Hall and others created a toxic, intimidating, and demeaning workplace environment, particularly for Plaintiff as an African American woman recovering from cancer and navigating PTSD. The repeated dissemination of falsehoods about her medical condition, retirement status, and work ethic constituted not only defamation but also formed the basis of a sustained hostile work environment.

27. Despite being fully aware of the ongoing discrimination, retaliation, and harassment through formal complaints and internal reporting, Defendant failed to take corrective action, thereby ratifying the unlawful conduct and causing Plaintiff severe emotional distress, reputational harm, and loss of career advancement opportunities.

## V. Claims for Relief

### Count I

***Discrimination on the Basis of Disability (Rehabilitation Act)***

28. Plaintiff incorporates by reference paragraphs 1 - 27 as though fully set forth herein.

29. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Plaintiff has been diagnosed with physical disabilities related to cancer recovery and mental health conditions including stress, anxiety, and PTSD,

which substantially limit one or more major life activities.

30. Plaintiff made her employer aware of her disabilities and sought reasonable accommodations, including medical leave and flexibility with work duties and attendance, consistent with medical recommendations and documentation submitted under the Family and Medical Leave Act (FMLA).

31. Despite Plaintiff's eligibility and submission of the required documentation, her supervisor, Mr. Howard Hall, repeatedly delayed and interfered with her participation in the Voluntary Leave Donor Program (VLTP), and ultimately charged her with AWOL during periods when she was approved to be on FMLA leave.

32. Mr. Hall further disclosed Plaintiff's confidential medical information to other employees, including falsely stating that Plaintiff had taken a medical or disability retirement, and that she suffered from an "attitude problem." These disclosures were made without Plaintiff's consent and led to significant humiliation and embarrassment in the workplace.

33. On or about March 22, 2022, when Plaintiff returned to work from leave, she discovered that coworkers, including Ms. Penelope Johnson and Mr. Gerald Fambro, had been informed that she would not return, and Ms. Johnson had even sent an email to others stating that "it would be a miracle if [Plaintiff] came back to work."

34. From March through July 2022, Plaintiff was repeatedly ostracized, scrutinized, and targeted by her supervisor based on stereotypes and hostility related to her medical conditions. This included Mr. Hall's inquiries about her medical status, refusal to engage in a collaborative discussion about accommodations, and inappropriate public commentary regarding her condition.

35. Defendant failed to engage in the interactive process required under the Rehabilitation Act and did not provide Plaintiff with reasonable accommodations necessary to perform her job, despite clear documentation of her disability and requests for accommodation.

36. As a direct and proximate result of Defendant's actions and omissions, Plaintiff suffered emotional distress, loss of professional opportunities, reputational harm, and other damages.

37. Defendant's conduct constitutes unlawful discrimination on the basis of disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.

## Count II

### *Retaliation - Title VII*

38. Plaintiff incorporates by reference paragraphs 1–27 as though fully set forth herein.

39. Plaintiff engaged in protected activity under Title VII, including but not limited

to:

a. Filing prior EEO complaints, including a formal complaint filed on or about August 22, 2022;
b. Opposing acts of discrimination based on her race (African American), sex (female), and age (57 at the time of the relevant events);
c. Raising internal complaints concerning disparate treatment and discriminatory conduct by her supervisor, Mr. Howard Hall.

40. In retaliation for her engagement in protected activity, Defendant, acting through its agents and employees, subjected Plaintiff to a pattern of adverse employment actions that were materially adverse and intended to deter Plaintiff from exercising her rights.

41. On or about January 2022, Mr. Hall delayed and obstructed Plaintiff's participation in the Voluntary Leave Donor Program (VLTP), despite her compliance with applicable procedures. The delay hindered Plaintiff's ability to access needed leave and constituted a retaliatory act related to her prior protected activity.

42. On or about March 22, 2022, when Plaintiff returned to work from medical leave, she discovered that coworkers and supervisors, including Mr. Hall and Ms. Penelope Johnson, had circulated false statements asserting that Plaintiff had taken or would take a disability retirement. These statements were made

without basis, during the pendency of her EEO complaints, and were intended to undermine her credibility, isolate her in the workplace, and retaliate for her protected conduct.

43. Around the same time, Plaintiff received an email from Ms. Johnson stating that it would be a "miracle" if Plaintiff returned to work, further demonstrating a retaliatory and hostile intent toward Plaintiff's continued employment.

44. On or about April 28, 2022, Plaintiff was improperly charged as AWOL for time covered under her previously submitted FMLA documentation. Mr. Hall intentionally delayed the processing of Plaintiff's paperwork and then cited the lack of timely documentation as a pretext to discipline her. This adverse action deviated from the treatment of similarly situated employees and was part of a continuing retaliatory campaign.

45. On May 17, 2022, following Plaintiff's internal report regarding COVID-19 safety concerns, she was forced to use annual leave, despite being entitled to other forms of leave. This action further illustrated retaliatory intent, as her concerns were legitimate and raised pursuant to workplace safety standards.

46. On or about July 21, 2022, Plaintiff was abruptly removed from her Timekeeper duties in ATAAPS without notice or explanation. This removal occurred shortly after the filing of her formal EEO complaint and effectively reduced her responsibilities and status within the office.

47. The acts of retaliation described herein occurred over an extended period and were carried out by supervisory personnel, including Mr. Hall, who had knowledge of Plaintiff's protected activities and prior EEO complaints.

48. Defendant failed to take remedial or corrective action despite being on notice of Plaintiff's protected activity and the retaliatory conduct perpetrated by its agents.

49. As a result of Defendant's retaliatory conduct, Plaintiff suffered tangible harm, including reputational damage, loss of duties and advancement opportunities, emotional distress, and diminished workplace standing.

50. Defendant's conduct constitutes unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, including the protections afforded on the basis of race, sex, and age.

**Count III**

***Retaliation - Rehabilitation Act***

51. Plaintiff incorporates by reference paragraphs 1–27 as though fully set forth herein.

52. Plaintiff has qualifying disabilities within the meaning of the Rehabilitation Act, including physical disabilities related to cancer and mental health conditions including anxiety and PTSD.

53. Plaintiff engaged in protected activity under the Rehabilitation Act by:

a. Requesting medical leave and reasonable accommodation in connection with her disabilities;

b. Submitting documentation for participation in the Voluntary Leave Donor Program (VLTP);

c. Opposing discriminatory treatment related to her disabilities; and

d. Filing an EEO complaint on or about August 22, 2022, which expressly raised claims of disability discrimination.

54. In retaliation for her engagement in protected activity under the Rehabilitation Act, Defendant, through its agents and employees, subjected Plaintiff to a series of adverse actions designed to discourage her from asserting her rights and continuing to seek accommodations or protection under the law.

55. In or around January 2022, Plaintiff submitted the necessary documentation to participate in the VLTP. Mr. Howard Hall intentionally delayed and obstructed her access to the program, causing financial and emotional hardship. This conduct was directly related to Plaintiff's disability status and her engagement in protected activity.

56. Upon returning to work on or about March 22, 2022, Plaintiff discovered that Mr. Hall and other coworkers had spread false rumors alleging she had taken a disability retirement. These statements were baseless and aimed at undermining Plaintiff's professional credibility and isolating her within the

workplace because of her disability and her prior protected activity.

57. Around the same time, Plaintiff received an email from a coworker, Ms. Penelope Johnson, expressing disbelief that Plaintiff had returned to work, stating it would be a "miracle." This communication reflected and reinforced the retaliatory and hostile environment facing Plaintiff upon her return.

58. On or about April 28, 2022, Plaintiff was charged AWOL for time that had been covered under her FMLA leave. Mr. Hall had delayed the processing of her documentation, then used the delay as a pretext for discipline. This treatment deviated from standard procedure and was retaliatory in nature, targeting Plaintiff for her medical absences and disability-related accommodations.

59. On May 17, 2022, Plaintiff was forced to use annual leave after raising a COVID-19 safety concern. The disciplinary response was disproportionate and inconsistent with the agency's treatment of other employees, further evidencing a pattern of retaliation against Plaintiff due to her disability-related requests and concerns.

60. On July 21, 2022, Plaintiff was removed from her Timekeeper responsibilities in ATAAPS without justification. This demotion occurred shortly after her formal EEO filing and after multiple incidents in which she sought accommodations or leave related to her disabilities.

61. Defendant had knowledge of Plaintiff's disabilities and protected activity and nonetheless failed to prevent or address the retaliation she experienced.

62. As a result of this retaliation, Plaintiff suffered loss of workplace responsibilities, professional credibility, emotional distress, and reputational harm.

63. Defendant's conduct constitutes unlawful retaliation in violation of Section 504 of the Rehabilitation Act of 1973, which prohibits retaliation against federal employees based on disability or the assertion of rights under the Act.

**Count IV**

***Hostile Work Environment - Title VII***

64. Plaintiff incorporates by reference paragraphs 1–27 as though fully set forth herein.

65. From approximately August 2021 through at least July 2022, Plaintiff was subjected to ongoing, severe, and pervasive harassment by her immediate supervisor, Mr. Howard Hall, and other coworkers, which created a hostile and abusive work environment.

66. This conduct was motivated, at least in part, by Plaintiff's race (African American), sex (female), and age (57 at the time), and included the following:

a. Repeated dissemination of false rumors by Mr. Hall and others that Plaintiff had taken or would take medical retirement, including specific references made

in or around March 2022 to colleagues and subordinates;

b. Derogatory statements by Mr. Hall that Plaintiff had an "attitude problem" and was not dependable, and attempts to link her medical leave and absences to misconduct or poor character;

c. Mr. Hall's refusal to meaningfully engage with Plaintiff upon her return from leave, including avoidance, exclusion from team communications, and general workplace ostracism;

d. A public reprimand of Plaintiff in front of her Commander, COL Kenneth Quimby, on or about April 20, 2022, which was both humiliating and unjustified;

e. Disparate treatment in terms of denial of training, performance-based funding, and opportunities that were offered to similarly situated peers outside her protected classes.

67. The harassment was unwelcome, occurred with frequency and intensity, and adversely affected the terms and conditions of Plaintiff's employment.

68. The Army, through its agents, had actual or constructive knowledge of the hostile environment and failed to take immediate and appropriate corrective action despite Plaintiff's internal complaints and formal EEO filings.

69. As a result of the hostile work environment, Plaintiff experienced reputational damage, emotional distress, and reduced opportunities for professional

advancement.

70. Defendant's actions and omissions constitute a violation of Title VII of the Civil Rights Act of 1964, as amended.

**Count V**

***Hostile Work Environment - Rehabilitation Act***

71. Plaintiff incorporates by reference paragraphs 1–27 as though fully set forth herein.

72. From approximately August 2021 through at least July 2022, Plaintiff—who has documented physical and mental health conditions including cancer recovery, anxiety, and PTSD—was subjected to a hostile work environment on the basis of her disabilities.

73. The conduct included, but was not limited to:

   a. Circulation of false rumors by Mr. Hall and others regarding Plaintiff taking disability retirement, despite no such plan or intent;

   b. An email Plaintiff received on or about March 22, 2022, from Ms. Penelope Johnson, stating it would be a "miracle" if Plaintiff returned to work, revealing disdain toward Plaintiff's health-related absences;

   c. Mr. Hall's pattern of disclosing or gossiping about Plaintiff's medical condition in the workplace, breaching her privacy and creating discomfort;

d. Avoidance and exclusion by Mr. Hall upon Plaintiff's return from medical leave, including failure to reintegrate her into team functions and discussions;

e. Discipline for alleged AWOL status for the period of November–December 2021, when in fact Mr. Hall had delayed the processing of her FMLA paperwork;

f. Ongoing comments and treatment by Mr. Hall that reflected a perception of Plaintiff as unreliable or problematic due to her health conditions.

74. This harassment was unwelcome, severe, and pervasive, and was carried out by supervisory personnel who were aware of Plaintiff's disability status and her engagement in protected EEO activity.

75. The Defendant failed to take prompt remedial action despite notice, allowing the hostile environment to persist.

76. As a direct result of the hostile work environment, Plaintiff suffered emotional distress, reputational harm, workplace isolation, and was further forced to take additional leave for health-related reasons.

77. Defendant's conduct violates the Rehabilitation Act of 1973, as amended.

**Count VI**

***Hostile Work Environment - Title VII***

78. Plaintiff incorporates by reference paragraphs 1 - 27 as though fully set forth

herein.

79. Plaintiff was subjected to a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

80. Plaintiff's supervisor, Mr. Howard Hall, engaged in a pattern of conduct that included spreading rumors that Plaintiff had an "attitude problem," ostracizing her in the workplace, and denying her the opportunity to participate in training and professional development opportunities that were extended to similarly situated non-African American employees.

81. Plaintiff was removed from her role as ATAAPS Timekeeper without justification shortly after engaging in protected EEO activity, further contributing to the hostile environment.

82. This conduct was unwelcome, based on race, and sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

83. Defendant knew or should have known of the racially hostile work environment and failed to take prompt and effective remedial action.

84. As a result of Defendant's unlawful conduct, Plaintiff suffered emotional distress, professional harm, and other damages.

**Count VII**

***Hostile Work Environment Based on Disability (Rehabilitation Act)***

85. Plaintiff incorporates by reference paragraphs 1 - 27 as though fully set forth herein.

86. Plaintiff was subjected to a hostile work environment on the basis of her physical and mental disabilities in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.

87. Plaintiff's supervisor disclosed her confidential medical information, including her cancer diagnosis, PTSD, and anxiety, to coworkers without her consent.

88. Hall mocked and questioned Plaintiff's medical condition, made derogatory remarks suggesting she was retiring due to disability, and charged her AWOL during approved medical leave.

89. Plaintiff's coworkers, influenced by management, expressed disbelief about her return to work, as evidenced by statements such as "it would be a miracle if she came back," which Plaintiff received in error via internal email.

90. The conduct Plaintiff endured was unwelcome, based on her disabilities, and sufficiently severe or pervasive to alter the terms and conditions of her employment and create a hostile and abusive work environment.

91. Defendant failed to take adequate steps to prevent or remedy the discriminatory and hostile conduct, despite being on notice through Plaintiff's repeated complaints and EEO activity.

92. As a direct and proximate result, Plaintiff suffered humiliation, emotional

distress, and loss of professional standing and advancement opportunities.

## VI. Prayer for Relief

**WHEREFORE**, Plaintiff, Arleatha Young, respectfully requests that this Court enter judgment in her favor and grant the following relief:

A. Compensatory Damages for the emotional distress, pain and suffering, mental anguish, reputational harm, and other non-economic losses caused by Defendant's unlawful conduct;

B. Back Pay with interest for wages, benefits, and other compensation lost due to Defendant's discriminatory and retaliatory actions;

C. Reinstatement to her former position or, in the alternative, front pay if reinstatement is not feasible;

D. Declaratory Relief declaring that the actions and practices of Defendant as described in this Complaint violate Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973;

E. Injunctive Relief enjoining Defendant from continuing its discriminatory and retaliatory employment practices and requiring corrective actions including proper training, oversight, and policy enforcement to prevent future violations;

F. Expungement of any negative or retaliatory personnel records or disciplinary actions resulting from the conduct described herein;

G. Punitive Damages, to the extent permitted by law, for Defendant's willful and

reckless disregard of Plaintiff's federally protected rights;

H. Attorney's Fees, Costs, and Expenses incurred in bringing this action pursuant to 42 U.S.C. § 2000e-5(k) and 29 U.S.C. § 794a(b);

I. Such other and further legal or equitable relief as the Court deems just and proper.

## VII. Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant in an amount which the Court deems appropriate, to include compensatory and punitive damages, attorney's fees, and costs of this action. Plaintiffs pray for such other, further and different relief to which she is entitled.

*Respectfully* submitted this 5th day of February, 2026.

*/s/ Johnathan F. Austin*
Johnathan F. Austin

**OF COUNSEL:**

Johnathan F. Austin, Esq.
AUSTIN LAW, P.C.
P.O. Box 321173
Birmingham, AL 35212
205-538-0169
E: austin@jaustinlawpc.com
*Counsel for Plaintiff*

Richard A. Rice
THE RICE FIRM, LLC
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
205-618-8733
E: rrice@rice-lawfirm.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically filed with the Clerk of Court, Northern District of Alabama, on February 5, 2026 using the CM/ECF filing system which will send notification of said filing to all counsel of record.

DARREN L. WALKER
Assistant United States Attorney
United States Attorney's Office
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
PH: 205-244-2131
darren.walker@usdoj.gov

*/s/ Johnathan F. Austin*
Johnathan F. Austin